May it please the Court, good morning. My name is Michael Burke, and I represent Mr. Tenorio in this appeal. I will watch my time and attempt to reserve two minutes of my time for rebuttal. Okay, thank you. With the Court's permission, I would like to discuss with the Court today the primary issue in our brief. Specifically, whether the district court in this case committed plain error when it imposed a condition of supervised release requiring Mr. Tenorio to, quote, participate in a mental health program as directed by the probation officer, which may involve taking prescribed medication, end quote. And he did so without first making the on-the-record findings required by this Court's opinion in United States v. Williams. The important part of this Court's decision in Williams is in the summary where the Court says before a mandatory medication condition can be imposed at sentencing, the district court must make on-the-record medically-grounded findings that court-ordered medication is, one, necessary to accomplish one or more of the factors listed in Section The district court in this case made neither of those findings before he imposed this condition of supervised release on Mr. Tenorio. We are dealing with a post-Williams — What exactly is the condition here that we're talking about? Can you read it? Yes. It is on page 24 of the ER. It is, you shall participate in a mental health program as directed by the probation officer, which may include taking prescribed medication. Okay. And our argument — Now, my understanding about the government's argument here is that the Cope case, somewhat confusingly, on the one hand, does remand for a explanation at the same time, says, but if there isn't one, we're going to understand that it doesn't include these kinds of — any drugs that would implicate a liberty interest. And I guess their notion is that, therefore, essentially, since the second option is available, it's not plain error not to give the explanation. That's how I read the government's argument as well, Judge Brezon. I would agree with you. It's confusing because the court in Cope did make that statement, but then they did remand for the district court to make these specific findings. But I — the difference, I think, between this and Cope is that the Cope condition was not linked to mental health issues. Correct. It was a broader one. It was any and — excuse me — any and all medications. That's correct. And our argument here is that even if you want to rely on that saving gloss that was placed on Williams in Cope, it wouldn't apply in this case because it — the condition here applies directly to mental health, a mental health program. And I — we do argue, and I will — But does that necessarily — is your point that any drug in a mental health program would be — have liberty implications? Yes, Your Honor. I would say yes. I cannot think of a medication that would be prescribed. Well, let me step back. I frankly think that requiring a supervised — a supervisee to take any medication implicates a significant liberty interest. But that's not what Williams said, right? So that would be not something we could really do on plain error. No, absolutely not. So let's assume we're within Williams, and then — I mean, I'm not a doctor, so maybe you're right, but how — is that right? How do we know that, like, an antidepressant or something that might be in a mental health program is necessarily one of these drugs that affects liberty? Your Honor, that was the reason in Williams the court required that there be on-the-record medical findings. I guess it would be helpful for me to know why you care about this, or do you really care about it. That is, if you can go back at the time that a drug is prescribed and say, you know, this is not a permissible drug, you can get the same ruling from the same judge, what's the difference exactly? Well, the defendant has an independent due process right to know in advance what actions may subject him to further incarceration. And the way the cases have interpreted — Well, presumably — well, maybe I'm missing something, but I would have thought that if the probation officer says — or the mental health practitioner says you have to take this drug, he could go to the judge before, you know, at that point and not have to risk a violation, no? He could. He certainly could. Right. So what's the difference whether he goes when we can deal with the specifics or whether he — we deal with the subtraction? Because it places the burden on Mr. Tenorio, who, when this happens, will not be sitting next to his attorney at the time. He will be meeting with his probation officer, who will be relying on the condition that was imposed. And you'll have Mr. Tenorio and his probation officer, and not this man. Well, more likely with his therapist or doctor. Well, the doctor might — might prescribe. Because the way that the condition is written and the way it has to be construed — and I'm not even sure it does say this — is that the probation officer can't prescribe the doctor, right? Not the condition that was stated by the judge. Well, that may be. It may be unclear. But I gather that legally, it can't be the probation officer who prescribes it. Well, certainly, that wouldn't be accepted by any pharmacy that I would know of. So I think it would be. Although it raises — No, I don't mean prescribes, who decides whether he has to take it or not. And that raises an entirely — Could I — sorry. Go ahead. It raises another issue, too, with regard to comparing the specifics of any of the individual case with Williams. Williams was a very specific case regarding a client with significant mental health issues who had already been treated with antipsychotics. In this case, it's difficult to imagine a case in which a court could find that the taking of an SSRI, an antidepressant, was necessary to further a goal. I mean, doctors presumably would say, we recommend that an antidepressant would help Mr. Tonorio or would help his defendant. But for it to be necessary to further the goal of supervised release seems quite remarkable. Well, there — Mr. Burke, therein lies my question for you, which is, how would a judge make these findings before he even knows what's going to be prescribed or might in an undiagnosed situation, how could the trial court decide this is going to impinge on his liberty interests when he doesn't even know what prescription — what kind of drug we're talking about here? It could be Tylenol Extra. Exactly, Your Honor. What — coincidentally, in trying to find an example of how we could make this work without completely removing the condition, and I — this isn't cited in the briefs, and I'm happy to submit a 28-J. It's an unpublished decision from the Fifth Circuit concerning actually the Western District of Texas. And in that case, the judge gave the — gave the condition that I believe actually works. It talks about mental health training — or, excuse me, a mental health program. And it says, however, the defendant's refusal to take antipsychotic or psychotropic medication prescribed by such a treatment provider shall not be a violation of supervised release unless the court, after affording the defendant due process, determines and orders that the defendant shall be compelled to take such medication and the defendant thereafter violates the court's order. So in that way, it — But isn't that already the law? So what you're saying is that that language has to be included so that the — the supervisee understands what medications he has to take or not take. Is that my understanding? And what his or her rights are, Your Honor. Yes. And you believe that that somehow clarifies for — because I believe your whole argument here is that he doesn't know what he can or cannot do. So that, for you, clarifies — he's going to know this is an antipsychotic drug that falls within that whole explanation that's added on, and that's going to clarify it. He's going to know that he has the right to challenge it. So — We can put that in our opinion. I mean, it's — I mean, this all seems kind of, you know, not very substantive. So my question was similar to Judge Berzon's from before about, look, why do you care what — what I'm wondering is, if the saving construction in Cope is given, so because there weren't findings, we say or we make the district court say that because there were no findings, he can't have to take antipsychotic medications, why is that worse for you? I mean, why are you fighting the saving construction of Cope? I'm — I'm fighting this — this — I'm sorry if I wasn't clear about that. I'm fighting the way that the saving construction is used in unpublished decisions from this Court which say, no need to worry, Supervisee, you can challenge it if you need to. That isn't a realistic answer to the defense. No, no, but what if the — what if the — the — because they didn't do the findings, there is a clarification in the supervised release conditions that says there was no findings, so you can't have liberty-affecting drugs be forced on you. Is that a problem? No, that is not a problem. I think that that — that does not exist in this case is the — is the problem. But would that be — I mean, is it better for you to have the judge — to have a remand where the judge actually makes some findings and says these can be ordered, or is it the saving construction? I'm wondering, like, what your client prefers to happen here. Well, it's clear from the record that my client wants to be well and wants to be treated. It's not an attempt to avoid medication. It's an attempt to — to acknowledge that he has due process rights. So if — And again, the difference between the Culp version and the version that you read from the Western District of Texas is just who goes first. I mean, essentially, that the defendant in that instance can refuse to take the drugs. But you still have the same problem. You have some doctor, you know, he — he still has to affirmatively do something, i.e., refuse to take a medication. And the difference is that then it's the government that has to go to court rather than him. Yes, but I think the more — the significance is more — more — more basic than that, because Mr. Tenorio will know when the time comes that he has a right not to take the medication. Mr. Tenorio does not want to go back to prison. If he's told he has to take medication, and his — his — But that's not what the Western District condition that you read as a model says. It says if he refuses to take it, then there has to be a court order. But it doesn't say that he has a right not to take it. He has the right to refuse. Now, that — Oh, not even — To challenge would be a better way to say it. He has the right to challenge. My concern is, Mr. Tenorio, in what he's — Well, doesn't he have a right to challenge under the precedent in the Ninth Circuit? I know that. We do know that from the precedent in the Ninth Circuit. But we are talking about people who are under supervision day in and day out who are not familiar with unpublished decisions from the Ninth Circuit or published decisions. Can we get briefly to the — you talk — you did have a challenge to the — based on the notion that the condition can be read as allowing the officer to select medications, right? Yes, Your Honor. And I think there may be something in that, because the notion — what exactly does that condition say? It's the — The oral version, what does it say? It says — It's the same condition that you read before, right? You shall participate in a mental health program as directed by the probation officer, which may include taking prescribed medication. Right. So — so I — the government's notion is that doesn't — that means it's the program that prescribes the medication, but I don't think it says that. I don't think so either, Your Honor. And I think it's very similar to the language that this Court noted in Williams and footnote 3 as potentially problematic, but it didn't have to reach it, because that was the written version in Williams, which was not applied. Okay. So your time is up. Thank you very much. Thank you very much. May it please the Court. I'm Peter Kozinets from the U.S. Attorney's Office in Phoenix. The defendant in this case did not object to the conditions of supervised release, but affirmatively embraced the opportunity to get a shorter in-custody sentence. I understand what the relevance of that is. I really found that argument, you know, close to offensive in the sense that, sure, he would like to have some treatment, but that doesn't mean that he wants to have conditions of supervised release that if he violates, he goes back to jail. There's a bit of a difference there. Well — I don't see how it's connected. Okay. Well, in looking at the sentencing record and the numerous statements that the defendant and his counsel made in connection with supervised release, we think that the defense emphasized over and over again that they wanted the shorter in-custody sentence so that he could get the treatment that he believed and understood and agreed that he needed sooner or later. But he never says, I know I have a right to have this Court right now make findings about my mental health and whether it's necessary for me to have drugs forced upon me, and I am giving up that right. He never said anything like that. Isn't that what he would need to say for your argument to succeed? Well, I think because the law in this circuit has been clear for a decade or so that, you know, this sort of condition can be imposed, and with a limiting construction, that he won't be forced to take anything that would likely infringe upon his significant mental health. Well, but in fact, it's very different, because COPE was a generic medical condition, not linked to mental health. This one was specifically linked to mental health. The likelihood that the mental health that, you know, taking, you know, Protonix or something is going to infringe your liberty is not too high. But this is getting pretty close in at this point, so I don't know that COPE even applies to this kind of a condition. And besides, which is completely confusing, because they did, in fact, remand in COPE. So, right. So in COPE, there was remand because this was a new concept. But this rule from COPE has been applied again and again in the last 10 years. It was applied in Daniels, Esparza, Blatchford, and most recently in the Castaneda case, which we have discussed in our Rule 28J letter filed a couple of weeks ago. Particularly, Blatchford and Castaneda dealt with a condition identical, or nearly so, to the condition at issue here. In Blatchford, the condition read that. But this is an unpublished opinion, right? So what is this going to help us with? Well, right. But it shows how this court has thought about these issues here. And really, they both dealt with the identical condition. And they both found that in light of the limiting construction of COPE and Daniels and Esparza, it's clear now. We can assume that district courts understand the law, know the law, and apply it correctly. And there's no reason to remand in that situation. And both Blatchford and Castaneda recognized this notion that I think is similar to this Fifth Circuit notion that was mentioned before, which is that the defendant will not be prejudiced. If the defendant has a good-faith belief that he or she has been prescribed a drug that is likely to infringe a significant liberty interest, they can refuse to take it without being held in violation of their supervisory discretion. And how will the person know that? How will this defendant know that? Well, we have Blatchford, we have Castaneda. And ultimately So he's supposed to read Blatchford, an unpublished opinion, and to think that that shows something? That's totally implausible.  They're electronically available. If they do show at least how some panels of the court have looked at this. But so if that's the government's position, then is there any problem with clarifying it? I mean, could we add the Fifth Circuit's language to this supervised release order? Would that be a problem for the government? I just don't think it's necessary here, because we know as a matter of law. Can we back up for a minute? Yes. It seems to me that this condition has other problems anyway. It says, shall participate in a mental health program as directed by the probation officer, which may include taking prescribed medicine. I gather it's common ground that the probation officer can't direct him to take any medicine, medication. Is that right? If I'm understanding your question, the way the condition has been construed in cases in this circuit is that it's not the probation officer who has any medication Well, I don't know why it says that, either. I mean, a mental health program, it doesn't say an independent mental health program or a medically supervised mental health program. As far as one can tell, the probation officer could say, here's your mental health program. Take, I'm going to get you a prescription for X, and you should take it. But that's not the way this identical language has been viewed in other cases. And again. So how is that, to go back to the same problem, how is anybody supposed to know that? I mean, the problem is that this is all at the risk of somebody going back to prison for a violation, right? So suppose you read it one way, but do you agree with me that it doesn't say what you're saying it says? It doesn't say, I mean, you're reading into mental health program some official discreet independent entity. I — Your Honor, respectfully, the way this — this goes to the sort of delegation argument in the opening brief, the notion that this delegates too much to the probation officer. Right. That's what it goes to. And the way this Court has approached the delegation issue in case after case in Stevens, Reardon, Blatchford, and Arcero, as explained in our answering brief, pages 21 to 22, is that these types of delegations have been repeatedly upheld by this Court as reflecting the delegation of mere administrative duties on the selection of what kind of mental health program, but not treatment decisions about prescribing medicine or courses of treatment and so forth. I don't understand why it says that, but — Is that — let me ask you. Yes. Is that because the probation department has, for example, contracts with certain mental health providers, and they direct them towards those mental health providers? Is that what that language is supposed to be about? That's precisely what that language gets to, and that's what these cases have recognized. And particularly on plain-error review, it's not — Well, but the reason it seems significant to me is because the whole provision is pretty loosey-goose. So if — I mean, it seems to me there is an argument for simply getting it stated to mean what it's — what you're saying it means rather than what somebody — what it means to have a mental health program, determining the medication, and also the notion that he can refuse to take it, and then the government has to go prove that it's not a Williams kind of drug. Well, and just on that point in particular, Your Honor, a point that Cope makes very clear is that the government does have the burden of justifying the prescription of a medication that infringes a certain — But Cope doesn't say — I did not understand Cope. But if you think this is what Cope means, we can write an opinion saying it's what it means, that he can — he doesn't have to go to court and say, I don't want to take this. He can simply refuse to take it, and he can't be charged with a violation unless the government now goes to court. Is that your understanding? Right. That's right. Is that what Cope says? I'm sorry. What's that? That in Cope? Well, what Cope says at page 955 is that it's the government that has the burden. If the government wishes to have medication that would infringe a significant liberty interest, the government has to go to the district court and obtain the necessary findings from Williams. So unless and until that happens, the defendant can't be compelled to take such a medication. So why did Cope remand? I'm just so baffled by this. If that's what Cope means, like you can't do this unless the government comes later, then why did Cope remand at the time? Right. Well, so Cope — I mean, this was sort of a new issue at the time, and I believe it was also in the Cope that there were other reasons to remand as well, that a defendant may not have had notice of some of the other conditions. But it was — it was new ground at the time. But since then, we've had a decade of case law that has developed and then has reaffirmed the notion that there is this judge-prison, what you call the second option that you can have. I think it was judge-prison. This limit in construction will apply, and there will be no plain error. Can you show me where in Cope this question of who goes first is addressed? So it's page 955, I believe, and there's discussion there about how if the government wishes to impose the condition, it has the burden of going there. I can pull the decision, but I believe it's on page 955. But is that — my understanding is that that is a discussion as to the, you know, prior condition. The Cope's statement that we're going to read a limiting construction into the — into the provision doesn't address the question of, well, then who's going to — how do you enforce that limiting construction? Doesn't? So the way that Cope has then subsequently been interpreted, particularly in the Blashford and the Castaneda case, is that the government has the burden, always has the burden, and the defendant cannot be, you know, held in violation of supervised release if there's a bona fide objection to taking that medication. As to who goes first, you know, from a practical perspective, the defendant would probably contact his probation officer, or maybe his mental health professional would, and they may informally try to resolve the issue. But if it becomes an issue, it's — the burden is ultimately on the government. It does seem like Castaneda basically says the same thing the Fifth Circuit has said. So I'd like to ask my question again about whether the government cares. I mean, you're saying because Castaneda says it, we don't need to say it explicitly. But is there any problem with remanding for the district court to say it explicitly here? Well, I think in this scenario, we really have — it's a very speculative situation. We have a defendant who never actually got medication. When he was in prison, he saw a psychiatrist six times a year. He's now been on supervised release for nine months. There's no indication in the record that he's had any real issue with any of these supervised release conditions. Nothing's been brought up before the district court. Even when the — This answer is making no sense to me. So if we remand for the district court to amend the condition to add these things that the Fifth Circuit has said and it never comes up, what's the problem with that? It sounds like you're saying this is never going to come up, but okay, then it's just a little bit of waste of time, but not much, right? So — Well, look, Pesternada is an unpublished opinion. So — Yes. As far as we can tell, as far as I can tell, if somebody prescribes Halidon or something to him next year and he refuses to take it, is there any Ninth Circuit case that would prevent him from being sent to prison for not having — not taking it?  It's a judicial issue. It's a judicial issue. It would, Your Honor, because Cope — Cope makes clear that the government has to establish the Hyten-Williams findings before he can be compelled to take a medication that would infringe his liberty. No, it seems like the government is conceding that. So what's the problem with someone saying it? I mean, it seems like we should say that. If that's what you think Cope means and you're saying that's the right thing to say and it's the same thing the Fifth Circuit says, then maybe we should say that. Is there any problem with that? Well, once again, Your Honor, I don't think there's anything wrong with making that clear, you know, here in this Court, but I don't know that it necessarily requires anything further in the district court. And it strikes me, and maybe this is a case that we should send to the mediators to get some — there doesn't seem to be any substantive disagreement. There is just a — there's a somewhat, you know, hard-to-figure-out disagreement about, you know, what piece of paper should say this thing that you're saying is the truth and is the rule, and why we're all sitting here and arguing about it is a little hard to figure out. Anyway, thank you, P.R. And I — well, and I would submit, you know, in light of all of that, it's clearly not a plain-error scenario. I mean, there's enough case law in the books to indicate that the district court, at least — Kagan. I mean, you're saying it's not a plain-error scenario because you're going to read into what happened everything he wants, but not because his sub — he's substantively incorrect. He's substantively correct. Well, no, because under — under the case law, there is this limiting construction that has been repeated over and over again. But you could read it, which you're now saying includes a procedural piece as well as a substantive piece. Well, I — again, Your Honor, I think — I think COPE itself just squarely puts the burden on the government. Well, it doesn't. I mean, that is with regard to the Williams stage. It doesn't say anything about what happens if he — if you have the — the imputed construction, and he then refuses to take medication. It does not directly address that. Castaneda does, but it's an unpublished opinion. So that's where we are. Anyway, thank you very much. Okay. Thank you, Your Honor. Sir, anything? Thank you very much. The United States v. Tenorio is submitted for planning purposes. We're going to take a break after the next case.
judges: Berzon, Friedland, Cardone